UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RLB CONTRACTING, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-3844 |
| | § | |
| GENESIS ENERGY, L.P., | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to dismiss.  Dkt. 34.  Limitation plaintiff RLB Contracting, Inc. ("RLB") moved to dismiss the claims of Genesis Energy, L.P. ("Genesis Energy") for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Dkt. 34-1.  Genesis Energy opposed the motion to dismiss and moved for leave to amend. Dkts. 37, 38.  RLB replied and filed a response to Genesis Energy's motion to amend.  Dkts. 41, 45.  Genesis Energy replied.  Dkt. 47.  Having considered the motions, associated memoranda, and applicable law, the court finds that RLB's motion to dismiss should be GRANTED, and Genesis Energy's motion to amend should be DENIED.

**I. BACKGROUND**

RLB owns and operates a dredge named Jonathon King Boyd and a tow boat called M/V Bayou Chevron (collectively, the "Vessels").  Dkt. 34-1 at 7.  On April 17, 2018, a spud of the Jonathon King Boyd allegedly contacted a submerged pipeline in Matagorda Bay, Texas, which caused a fire and resulted in the destruction of the Vessels and other damage, including "the release of approximately 3,458 barrels of product from within" the pipeline.  Dkt. 21 at 2; Dkt. 1 at 2.  On October 16, 2018, RLB filed a complaint for exoneration or limitation of liability.  Dkt. 1.  About

a month later, Genesis Energy filed an answer and claim.  Dkts. 9, 10.  In December 2018, RLB

answered and counterclaimed.  Dkt. 14.  Genesis Energy filed an amended claim in April 2019.

Dkt. 21.  RLB now moves to dismiss for lack of subject matter jurisdiction under Federal Rule of

Civil Procedure 12(b)(1).  Dkt. 34-1.  RLB argues that Genesis Energy does not have standing to

pursue its claims because Genesis Energy is not the direct owner or operator of the pipeline at

issue in this case.  Dkt. 34-1 at 8–16.

Genesis Energy concedes that it is not the direct owner or operator of the pipeline but

argues that the structure of the Genesis entities is complex.  Dkt. 37 at 1–3.  The direct owner of

the pipeline is Matagorda Offshore, LLC ("Matagorda Offshore"), and the operator is Genesis

Offshore Holdings, LLC ("Genesis Offshore").[1]  Dkt. 34-1 at 14.  Matagorda Offshore and Genesis

Offshore are subsidiaries of Genesis Energy.  Dkt. 37 at 3.  More precisely, Genesis Offshore owns

100% of Matagorda Offshore.  Dkt. 34-1 at 14 & Ex. 9 (Dkt. 34-17).  Yet another entity, Genesis

Crude Oil, LP, owns 100% of Genesis Offshore.  Dkt. 34-1 at 14 & Ex. 10 (Dkt. 34-18).  Genesis

Energy owns Genesis Crude Oil, but the parties dispute whether Genesis Crude Oil is a wholly-

---

[1] Oddly, in RLB's reply to Genesis Energy's memorandum in opposition to the motion to dismiss, RLB argues that neither Genesis Energy nor any of its subsidiaries have put forth proof showing ownership of the pipeline.  Dkt. 41 at 2.  Arguments raised for the first time in a reply are waived. *See Murthy v. Abbott Labs.*, 847 F. Supp. 2d 958, 977 n.9 (S.D. Tex. 2012) (Ellison, J.) (declining to analyze argument that movant waived by raising it for the first time in reply to its motion to dismiss).  Still, the court addresses this argument on its merits because the issue of ownership of the pipeline is important to the court's standing analysis.  RLB spends the entirety of its motion to dismiss establishing that Matagorda Offshore, a subsidiary of Genesis Energy, owns the pipeline. Dkt. 34-1.  RLB itself submits several exhibits establishing that Matagorda Offshore currently owns the pipeline.  *Id.* at 9–16.  Genesis Energy concedes that Matagorda Offshore is currently the direct owner of the pipeline.  Dkt. 37 at 1–3.  Thus, the court rejects RLB's argument in its reply that the ownership of the pipeline is unknown and might not even be connected to Genesis Energy because RLB sufficiently established Matagorda Offshore's ownership of the pipeline in its own motion to dismiss.  Dkt. 34-1.

2

owned subsidiary of Genesis Energy or is owned 99.9% by Genesis Energy.  Dkt. 34-1 at 15 & Ex. 14 (Dkt. 34-22); Dkt. 37 at 1–3.  Either way, the direct owner of the pipeline, Matagorda Offshore, is several subsidiaries or wholly-owned subsidiaries removed from Genesis Energy. Dkt. 34 at Ex. 15 (Dkt. 34-23).

Genesis Energy contends that it brought suit in its name only because: (1) most of the costs associated with the damage were billed directly to Genesis Energy so that Genesis Energy incurred debt in its own name, and (2) as a corporate parent, Genesis Energy has standing to sue on behalf of its subsidiaries.  Dkt. 37 at 1–5.  Genesis Energy also argues that RLB's motion to dismiss for lack of subject matter jurisdiction is actually an objection to prudential standing and that RLB has waived that objection by failure to timely raise it.  *Id.* at 6–7.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party can move for dismissal of an action based on lack of subject matter jurisdiction.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  It is a well settled principle of law that a federal court lacks subject matter jurisdiction if a plaintiff does not have standing.  *See, e.g.*, *McClure v. Ashcroft*, 335 F.3d 404, 409 (5th Cir. 2003).  "The [standing] inquiry has two components: constitutional limits, based on the case-and-controversy clause in Article III of the Constitution; and prudential limits, crafted by the courts." *Id.* at 408.  "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161.  The court has the authority to consider disputed factual issues when addressing a Rule (12)(b)(1) motion.  *Id.*  If a party makes a factual attack on jurisdiction, "the [c]ourt may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties

that is relevant to the issue of jurisdiction." *Construtodo, S.A. De C.V. v. Conficasa Holdings, Inc.*, No. CIV.A. H-12-3026, 2014 WL 427114, at *1 (S.D. Tex. Jan. 31, 2014). RLB makes a factual attack on jurisdiction, and some of the facts upon which RLB bases its motion are disputed. Dkt. 34-1. Thus, in the court's consideration of disputed factual issues, it will not address the merits of the suit, but it has the authority to examine and weigh the evidence to "satisfy itself as to the existence of its power to hear the case." *Construtodo*, 2014 WL 427114, at *1. "The burden of proof . . . is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. The court should only grant a Rule 12(b)(1) motion "if it appears that the [claimant] cannot prove any set of facts in support of his claim that would entitle [claimant] to relief." *Id.*

### III. ANALYSIS

#### A.     Article III Standing

"The constitutional dimension of the standing doctrine derives from the 'case or controversy' requirement of [A]rticle III of the federal Constitution and thus presents [the court] with a threshold question concerning its power to entertain the lawsuit before it." *O'Hair v. White*, 675 F.2d 680, 686 (5th Cir. 1982). "The irreducible minimum constitutional standing requirement to invoke a federal court's [A]rticle III jurisdiction is (1) injury-in-fact (2) fairly traceable to the defendant's actions and (3) likely to be redressed by a favorable decision." *Ensley v. Cody Res., Inc.*, 171 F.3d 315, 319 (5th Cir. 1999). Article III standing cannot be waived. *See, e.g.*, *Bd. of Miss. Levee Comm'rs v. U.S. E.P.A.*, 674 F.3d 409, 417–18 (5th Cir. 2012) (comparing constitutional standing to prudential standing and noting that constitutional standing cannot be waived).

In a motion that frequently blurs the lines between constitutional and prudential standing arguments, RLB argues that Genesis Energy lacks constitutional standing to bring its claims

because Genesis Energy does not own the pipeline which was allegedly damaged by RLB's dredge, and thus, has not suffered an "injury-in-fact" sufficient to confer Article III standing. Dkt. 34-1 at 18. The United States Supreme Court has held that a parent corporation has Article III standing on the basis of injury to a subsidiary.[2] *See Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 335–336, 110 S. Ct. 661 (1990); *see also Ensley*, 171 F.3d at 319–20 (noting that the "incantation that a shareholder may not sue for the corporation's injury does not attack [the] injury in fact" requirement of Article III standing and holding that shareholder plaintiff had been sufficiently injured to establish constitutional standing by the "significant diminution" in the value of his shares); *BCC Merch. Sols., Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 449–50 (N.D. Tex. 2015) (holding that a parent corporation had Article III standing because it was "indirectly damaged" by an alleged breach of contract which allegedly damaged a subsidiary). Thus, Genesis Energy has Article III standing on the basis of injury to its subsidiaries.

The three cases to which RLB cites for the proposition that Genesis Energy has not suffered an injury-in-fact sufficient to confer Article III standing are not binding on this court. Dkt. 34-1 at 18. Moreover, they are legally and factually distinguishable. Dkt. 34-1 at 18 (citing *Eiland v. Jackson*, 34 F. App'x 40, 42 (3d Cir. 2002) (holding that plaintiff lacked standing to assert claim for damage to home that was allegedly caused during illegal search because he was not the homeowner); *Abarca v. Merck & Co.*, No. 1:07-CV-0388 DOC, 2012 WL 1344818, at *2 (C.D. Cal. Apr. 17, 2012) (does not address standing and instead addresses liability for the tort of inverse condemnation); *Berry v. City of Little Rock*, 904 F. Supp. 940, 946 (E.D. Ark. 1995) (holding that

---

[2] RLB argues that Genesis Energy does not have standing as a parent corporation because of the "shareholder standing" rule. Dkt. 41 at 4. The shareholder standing rule is a limitation on prudential standing—not Article III standing—so the court will address the shareholder standing argument in the next section. *See* Part III.B, *infra*.

plaintiff tenants' alleged injuries from city ordinance were too generalized to confer standing)). Thus, the motion to dismiss for lack of Article III standing is DENIED.

## B.      Prudential Standing

However, "[e]ven if a [claimant] establishes Article III standing, [the court] may consider whether prudential standing principles nonetheless counsel against hearing the [claimant's] claims." *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 474 (5th Cir. 2013).  Even if a claimant has sufficiently alleged injury to establish constitutional standing, a claimant "generally must assert his own legal rights and interests . . . and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197 (1975).  The Fifth Circuit has held that "[u]nlike constitutional standing, prudential standing arguments may be waived" by a failure to timely raise the issue. *Bd. of Miss. Levee Comm'rs*, 674 F.3d at 417–18; *see, e.g.*, *Ensley*, 171 F.3d at 320 (finding waiver of a prudential standing argument).

Although RLB often does not distinguish between Article III standing and prudential standing in its motion and contends that its standing objections are all jurisdictional, RLB's ultimate contention is that Genesis Energy does not have standing because it is not the proper party to bring suit since it is not the direct owner or operator of the pipeline.  Dkt. 34-1 at 18–19; Dkt. 41 at 7.  This is a prudential standing argument.  When federal courts consider prudential standing arguments, they consider "not whether there is jurisdiction, but the prudential limitation on [the courts'] *exercise* of that jurisdiction." *Ensley*, 171 F.3d at 320; *see also Franchise Tax*, 493 U.S. at 335–38 (distinguishing between Article III standing and "the prudential requirements of the standing doctrine"); *BCC*, 129 F. Supp. 3d at 447–51 (discussing the difference between Article III standing and prudential standing).

6

RLB's central argument is that Genesis Energy is the wrong claimant because it does not directly own or operate the pipeline.  Dkt. 34-1 at 7–20.  Accordingly, RLB's argument can be more appropriately characterized as a real-party-in-interest argument, which is governed by Federal Rule of Civil Procedure 17.  "Rule 17(a)(1) . . . requires that "[a]n action must be prosecuted in the name of the real party in interest."  *In re Signal Int'l, LLC*, 579 F.3d 478, 487 (5th Cir. 2009).  The rule also provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed" to join or substitute the appropriate party.  Fed. R. Civ. P. 17(a)(3).

Genesis Energy argues that RLB has waived its prudential standing arguments by failing to timely raise them.  Dkt. 37 at 7.  A prudential standing argument under Rule 17 must be made "in time to allow the opportunity for joinder of the ostensible real party in interest, and the defense may be waived" if not timely asserted.  *See, e.g.*, *In re Signal Int'l*, 579 F.3d at 487–88.  An objection is tardy when it hampers judicial efficiency.  *Id.* at 488.  In determining whether the objection has been waived, courts consider several factors, including:

> when the defendant knew or should have known about the facts giving rise to the plaintiff's disputed status as a real party in interest; whether the objection was raised in time to allow the plaintiff a meaningful opportunity to prove its status; whether it was raised in time to allow the real party in interest a reasonable opportunity to join the action if the objection proved successful; and other case-specific considerations of judicial efficiency or fairness to the parties.

*Id.*  "There is no magic formula for determining practicality and convenience."  *Id.*  The decision of waiver is "within the discretion of the district court."  *Id.*

It is undisputed that RLB waited to advance its prudential standing arguments until after the court issued its default order in July 2019, which bars other potential claimants from filing suit. Dkt. 28.  RLB claims that it only "recently discovered" that Genesis Energy is not the owner of

the pipeline.  Dkt. 34-1 at 6.  Genesis Energy claims that RLB received notice of the real-party-in-interest issue at least by March 2019 when Genesis Energy submitted its initial disclosures, and possibly back in June 2018 during pre-suit communications, because Genesis Energy shared documents at both times demonstrating that Genesis Energy had been billed directly for costs associated with RLB's alleged actions but had paid its invoices from the accounts of subsidiaries. Dkt. 37 at 5 & Ex. D (Dkt. 37-4).  However, Genesis Energy answered a request for production on January 31, 2020, stating unequivocally that it was the sole owner of the pipeline.  Dkt. 41 at Ex. A (Dkt. 41-1) at 2.[3]  Further, Genesis Energy contends that it was confused about its own structure, so it strains credulity for Genesis Energy to suggest that RLB was somehow in a better position to determine Genesis Energy's structure than Genesis Energy itself.  Dkt. 37 at 9–10; Dkt. 38 at 7. Further, most other cases where courts have found waiver were right before, during, or after trial. *See, e.g.*, *Rogers v. Samedan Oil Corp.*, 308 F.3d 477, 484 (5th Cir. 2002) (assertion day before trial constituted a waiver); *Gogolin & Stelter v. Karn's Auto Imps., Inc.*, 886 F.2d 100, 102 (5th Cir. 1989) (failure to raise assertion until motion for a directed verdict constituted a waiver); *Hefley v. Jones*, 687 F.2d 1383, 1388 (10th Cir. 1982) (failure to raise assertion until sixteen days before trial constituted a waiver).  Thus, the court holds that RLB has not waived its objection to Genesis Energy as the real party in interest.  The court will now address RLB's prudential standing argument.

Although Genesis Energy has established Article III standing, "[t]he more difficult issue is whether [Genesis Energy] can meet the prudential requirements of the standing doctrine." *Franchise Tax*, 493 U.S. at 336.  "One of these is the requirement that 'the plaintiff generally must

---

[3] For ease of understanding, the court references the electronic page numbers on all exhibits rather than the pagination on the exhibits themselves.

assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* (quoting *Warth*, 422 U.S. at 499).  RLB argues that the shareholder standing rule, which is related to this requirement, prevents Genesis Energy from raising a claim on behalf of its subsidiaries.[4]  *Id.*; Dkt. 41 at 4.  The shareholder standing rule "is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation."[5]  *Id*; *see, e.g.*, *Collins v. Mnuchin*, 938 F.3d 553, 575 (5th Cir. 2019), *cert. granted*, No. 19-422, 2020 WL 3865248 (U.S. July 9, 2020), and *cert. granted*, No. 19-563, 2020 WL 3865249 (U.S. July 9, 2020) ("[T]he prudential shareholder-standing rule . . . is a strand of the standing doctrine that prohibits litigants from suing to enforce the rights of third parties."); *Jewell v. United States*, 548 F.3d 1168, 1173 (8th Cir. 2008) ("It is well established that a shareholder or officer of a corporation cannot recover for legal injuries suffered by the corporation."); *Jireh Consulting Inc. v. United States*, 167 F. App'x 179, 181 (Fed. Cir. 2006) ("[T]he so called shareholder standing rule 'generally prohibits shareholders from initiating actions to enforce the rights of the corporation . . . .'" (quoting *Franchise Tax*, 493 U.S. at 336)).

Although Genesis Energy does not explicitly address the shareholder standing rule, it argues that it is the real party in interest because several debts related to RLB's alleged actions were incurred in its name.  Dkt. 37 at 1–5.  For example, the United States Coast Guard determined that Genesis Energy was the responsible party for clean-up costs related to RLB's alleged actions

---

[4] The shareholder standing rule is "phrased in terms of corporations and shareholders, [but] it applies with equal force to limited partnerships" and "limited liability companies" like Genesis Energy and its subsidiaries. *In re Acis Cap. Mgmt., L.P.*, 604 B.R. 484, 507–08 (N.D. Tex. 2019).
[5] Notably, the shareholder standing rule does not apply if "the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Franchise Tax*, 493 U.S. at 336.  There is also an exception "allowing a shareholder with a direct personal interest in a cause of action to bring suit even if the corporation's rights are also implicated." *Id.* Genesis Energy does not argue that this exception applies, and the facts which Genesis Energy pleads do not suggest that it does.

and invoiced Genesis Energy directly.  Dkt. 37 at 5.  However, Genesis Energy paid those costs and others out of the account of the subsidiary which operates the pipeline, Genesis Offshore. Dkt. 37 at Ex. D (Dkt. 37-4) at 87.  Genesis Energy acknowledges that all debts incurred by Genesis Energy related to RLB's alleged actions "were paid by checks drawn on the accounts of various subsidiaries."  Dkt. 37 at 5.  The injury which Genesis Energy pleads is thus indistinguishable from the injuries allegedly suffered by the entities that own and operate the pipeline.  *See Jewell*, 548 F.3d at 1173 (holding that shareholder did not have standing because his injury was "indistinguishable from the injury suffered by . . . [the] organization.").  Although Genesis Energy's indirect injury as a shareholder is sufficient to confer Article III standing, "the prudential rule against shareholder suits for injuries to the corporation precludes [it] from bringing" its claims against RLB because they belong to the entities which own and operate the pipeline. *See Nocula v. UGS Corp.*, 520 F.3d 719, 726–27 (7th Cir. 2008).

## C. Leave to Amend

Genesis Energy moves to amend to join its subsidiaries under Federal Rule of Civil Procedure 17(a)(3), which states that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed" for the real party in interest to join.  Dkt. 37 at 8; Dkt. 38.  Genesis concedes that a claimant must establish "a reasonable basis for naming the wrong party" to be entitled to a Rule 17(a)(3) remedy.  Dkt. 37 at 8 (citing *Magallon v. Livingston*, 453 F.3d 268, 273 (5th Cir. 2006)); *see also Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 166 (5th Cir. 2016) ("A good-faith, nonfrivolous mistake of law triggers Rule 17(a)(3) ratification, joinder, or substitution."); *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 308 (5th Cir. 2001) ("[M]ost courts have interpreted the last sentence of Rule 17(a) as being applicable only when the plaintiff brought the action in her own

name as the result of an understandable mistake, because the determination of the correct party to bring the action is difficult."). Genesis Energy argues that it is entitled to amend because its mistake was understandable in light of the complex ownership structure of the Genesis entities and the pipeline. Dkt. 37 at 9–10; Dkt. 38 at 6–7. It argues that Genesis Energy made a reasonable decision to sue in its own name because (1) "numerous changes in ownership and name changes occurred" in the year before the incident at issue in this case, and (2) several invoices were billed directly to Genesis Energy. Dkt. 38 at 6–7. But Genesis Energy submits no evidence to support the first contention, and the second is not compelling for reasons already discussed. *See supra*, Part III.B. Further, RLB submits evidence which shows that Matagorda Offshore forwarded to the Calhoun Port Authority proof of assignment of the easement agreement for the pipeline at issue in this case on its own letterhead back in 2016, which suggests that (1) Matagorda Offshore has been the owner of the pipeline since at least 2016, and (2) the owner of the pipeline was not so difficult to ascertain. Dkt. 34 at Ex. 6-1 (Dkt. 34-8) at 84–92; Dkt. 41 at 6. Genesis Energy itself admits that it drew checks for invoices billed directly to Genesis Energy on the accounts of subsidiaries, suggesting that it can, in fact, distinguish between itself and its subsidiaries. Dkt. 37 at 5. Thus, the court is not convinced that Genesis Energy's mistake as to the structure of the Genesis entities is an understandable or excusable one.

The *Verizon* case, which Genesis Energy cites as "factually similar," is not binding on this court and is nevertheless legally and factually distinguishable.[6] Dkt. 37 at 9; Dkt. 38 at 6–7 (citing

---

[6] In a footnote, Genesis Energy also cites to another distinguishable case in which a court allowed the real parties in interest to join. Dkt. 38 at 7 (citing *Asset Funding Grp., LLC v. Adams & Reese, LLP*, No. CIV.A 07-2965, 2009 WL 799752, at *5 (E.D. La. Mar. 23, 2009)). The court in that case determined that the plaintiff's failure to initially join the real parties in interest was an "excusable mistake" because "some measure of difficulty exist[ed] in determining which party own[ed] which specific interest" and "any confusion regarding the real parties in interest [was] a result of the less than careful and specific actions of all parties." *Id.* at *6–7. In contrast, Genesis

11

*Verizon Bus. Glob. LLC v. Hagan*, No. CIV.A. 07-415, 2009 WL 928633, at *3 (E.D. La. Mar. 30, 2009)).  In *Verizon*, the court held that the plaintiff parent corporation's failure to bring suit in the name of its subsidiary was an understandable mistake because the plaintiff "demonstrated that the determination of the proper party to sue was made difficult by . . . numerous mergers, acquisitions, corporate transactions and name changes." *Verizon*, 2009 WL 928633, at *3.  But the plaintiff in that case submitted evidence as to the difficulty in ascertaining the identity of the proper party to bring suit.  Dkt. 45 at 19 & Ex. H (Dkt. 45-8).  In contrast, Genesis Energy has put forth no evidence other than conclusory statements as to why it did not know its own structure well enough to determine the identity of the appropriate party for this litigation.  "In issues of corporate law structure often matters." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 469, 123 S. Ct. 1655 (2003).  Thus, Genesis Energy's motion for leave to amend under Rule 17 is DENIED.

In the alternative, Genesis Energy argues that the court should grant Genesis Energy's motion for leave to amend under Federal Rule of Civil Procedure 16(b).  Dkt. 38 at 8–10.  "Federal Rule of Civil Procedure 16(b) governs amendment of pleadings after a scheduling order's deadline to amend has expired." *Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009).  After a scheduling order has been entered, it "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Federal Rule of Civil Procedure 15(a) allows leave to amend "when justice so requires," but a party "must show good cause for not meeting the deadline before the more liberal standard of Rule 15(a) will apply to the district court's denial of leave to amend." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003).

---

Energy alone answered a request for production explicitly naming itself as the only entity that owned the pipeline at issue in this case and submits no evidence to support its argument that ascertaining the real party in interest was difficult due to numerous name changes and ownership changes in the year prior to the incident at issue in this case.  Dkt. 41 at Ex. A (Dkt. 41-1) at 2; Dkt. 37 at 9; Dkt. 38 at 7.  Thus, the court is not persuaded by this case.

"Four factors are relevant to good cause: '(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'"  *Marathon*, 591 F.3d at 470 (quoting *Sw. Bell Tel. Co.*, 346 F.3d at 546).  The importance of the amendment is obvious.  If the court does not allow leave to amend, Genesis Energy's claim will be dismissed, and its subsidiaries will not be allowed to join in its place because the court entered an order of default on this case in July 2019.  Dkt. 28.  RLB contends that it would be prejudiced by the amendment because it would have to restart the discovery process and incur additional costs. Dkt. 45 at 15.  However, RLB recently filed suit in state court against both Matagorda Offshore and Genesis Offshore, the entities for which it opposes joinder here.  Dkt. 49 at Ex. 1 (Dkt. 49-3) at 6.  Thus, the prejudice to RLB is minimal.  Still, Genesis Energy's explanation for the failure to timely move for leave to amend is not persuasive.  Genesis Energy should have known the structure of its own entities.  Genesis Energy has offered no evidence as to why its structure was so confusing except conclusory statements about a series of different owners and name changes in the year before the incident at issue in this case, and those statements directly conflict with persuasive evidence RLB submits.  Thus, Genesis Energy has failed to show good cause for its failure to amend prior to the deadline in the scheduling order as required by Rule 16.  Genesis Energy's motion for leave to amend is DENIED.

## IV. CONCLUSION

For the aforementioned reasons, Genesis Energy's motion for leave to amend (Dkt. 38) is DENIED, and RLB's motion to dismiss (Dkt. 34) is GRANTED.  Genesis Energy's claims are DISMISSED WITH PREJUDICE.  The court will enter final judgment concurrently with this order.

Signed at Houston, Texas on October 2, 2020.

_____
Gray H. Miller
Senior United States District Judge